[No. 3870.   Decided July 6, 1901.]

GEORGE W. BOYD, *Respondent, v.* THURINGIA INSURANCE COMPANY OF ERFURT, GERMANY, *Appellant.*

INSURANCE — POLICY ISSUED TO MORTGAGEE — EFFECT OF ALIENATION BY MORTGAGOR.

Where a policy of fire insurance was issued to a mortgagee, "loss, if any, payable to the mortgagee as interest may appear," and the policy provides that if with the consent of the company an interest under the policy shall exist in favor of a mortgagee, the conditions contained in the policy "shall apply in the manner expressed in such provisions and conditions of insurance relating to such interest as shall be written upon, attached, or appended thereto," the rights of the mortgagee under the policy would be unaffected by the act of the owner in violating the conditions in the policy against alienation and subsequent insurance, when such conditions were not attached to or written upon

that part of the contract in the policy giving the mortgagee an interest thereunder (ANDERS, J., dissents).

Appeal from Superior Court, Spokane County.—Hon. LEANDER H. PRATHER, Judge. Affirmed.

*McBride & Folsom,* for appellant.

*Adolph Munter,* for respondent.

The opinion of the court was delivered by

MOUNT, J.—This appeal is from a judgment in favor of respondent, entered on the complaint and answer in an action against appellant on a fire insurance policy. Plaintiff sued as assignee of a mortgage on the premises upon which was situated a building covered by insurance. The complaint alleges, in substance, that one Andrew Raub was the owner of land upon which was situated a house; that he borrowed $400 from. one Minnie Wegner, and, as security therefor, executed a mortgage upon the premises, and agreed in said mortgage to keep said house insured in the sum of $300, loss, if any, payable to said Minnie Wegner, her heirs or assigns, until the said mortgage was fully paid; that subsequently, and on the date of said mortgage, insurance was procured of appellant upon said property in the sum of $300, loss, if any, payable to Minnie Wegner as her interest might appear, and said policy was thereupon delivered by said appellant to said Wegner; that subsequently Andrew Raub transferred his interest · in the said property to one Edith Sheridan, without the knowledge of the mortgagee; that the house was thereafter totally destroyed by fire, and was of greater value than the insurance; that no payments have been made upon the said mortgage, and that proofs of loss were offered by said Wegner, but that appellant refused to accept such proofs and to pay the said loss; that said Wegner thereafter assigned her rights under said pol-

icy, as well as her mortgage, to plaintiff, who brought this suit praying for judgment for $300 and costs. The allegations of the complaint were not denied. The said policy of insurance, a copy of which is made a part of the complaint, contains among others, the following provisions: It names Andrew Raub as the insured, and the limit of liability $300, "loss, if any, payable to Minnie Wegner, mortgagee, as interest may appear."

"This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on the property covered in whole or in part by this policy; or if any change other than by death of an insured take place in the interest, title or possession of the subject of insurance (except change of occupants without increase of hazard), whether by legal process or judgment, or by voluntary act of the insured, or otherwise. . . . If with the consent of this company an interest under the policy shall exist in favor of a mortgagce or of any person or corporation having an interest in the subject of insurance, other than the interest of the insured as described herein, the conditions hereinbefore contained shall apply in the manner expressed in such provisions and conditions of insurance relating to such interest as shall be written upon, attached or appended thereto. . . . This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements, or conditions as may be endorsed hereon or added hereto."

An answer was filed, alleging, in substance, that the insurance company had not been notified, and had not consented to the transfer of the property by Raub to Edith Sheridan; that said Edith Sheridan, in violation of the terms of the policy to Raub, and without the knowledge or consent of defendant, had secured other insurance upon the building; that the latter policy provided that the insurer should be liable only for such proportion of the actual

loss sustained as $800 would bear to the whole amount of insurance; that this policy of insurance was collected by said Edith Sheridan after the loss; that the said house did not exceed in value the sum of $800; and that the land upon which the house was situated greatly exceeds in value the amount of the mortgage. The demurrer to this answer was sustained, and judgment entered in favor of plaintiff.

The questions raised upon this appeal depend upon the question whether Andrew Raub was the insured under the policy of insurance, or whether Minnie Wegner was the insured. The determination of this question must depend upon the construction of the contract of insurance. The general rule is that where a mortgagor procures a policy of insurance to be issued to himself, loss, if any, payable to the mortgagee as interest may appear, the former is the insured, and subsequent alienation avoids the policy. *Grosvenor v. Atlantic Fire Ins. Co.*, 17 N. Y. 391; *Continental Ins. Co. v. Hulman*, 92 Ill. 145 (34 Am. Rep. 122); May, Insurance (4th ed.), § 452 D. But, where the mortgagee is the party intended to be insured by the policy of insurance, no subsequent acts of the mortgagor will invalidate the policy of insurance. *Hastings v. Westchester Fire Ins. Co.*, 73 N. Y. 141; *Syndicate Ins. Co. v. Bohn*, 65 Fed. 165 (27 L. R. A. 614); *City Five Cents Savings Bank v. Pennsylvania Fire Ins. Co.*, 122 Mass. 165; *King v. State Mutual Fire Ins. Co.*, 54 Am. Dec. 683, and note; *Pioneer Savings & Loan Co. v. Providence, etc., Ins. Co.*, 17 Wash. 175 (49 Pac. 231, 38 L. R. A. 397).

Minnie Wegner loaned Andrew Raub $400, and it was agreed in the mortgage that the building on the property mortgaged should be insured for a less sum, loss payable to her or her assigns. The policy in question was issued and delivered to her. The mortgagor then sold the property. Loss occurred. The insurance company refused to comply

with its contract, claiming forfeiture under the clause pro-
hibiting alienation, and on account of insurance subse-
quently procured by the grantee of the mortgagor.   This
contract should be construed as any other contract,—in ac-
cordance with its purport and in connection with its sur-
roundings.   It was well understood at the time the policy
was issued that until the mortgage debt was paid, Raub
had no interest in the policy.   He was the owner of the
property insured, but the mortgagee, who was the payee
named in case of loss during the existence of the mortgage
and the life of the policy, was, in case of loss, entitled to
the whole of the insurance.   The policy was delivered to
and held by her, and, notwithstanding Raub was named
as the insured, she was the real beneficiary.   Following
the provison naming the clauses for which the policy was
to be avoided was this provision:

"If with the consent of this company an interest under
the policy shall exist in favor of a mortgagee or of any
person or corporation having an interest in the subject of
insurance other than the interest of the insured as described
herein, the conditions hereinbefore contained shall apply
in the manner expressed in such provisions and conditions
of insurance relating to such interest as shall be written
upon, attached or appended thereto."

It seems plain that when the company consented to the
existence of the interest of Minnie Wegner by recognizing
her as mortgagee and payee, and delivering the contract
to her, and when it said "the conditions hereinbefore con-
tained shall apply in the manner expressed in such pro-
visions   .   .   .   *as shall be written upon, attached or*
*appended* thereto," and when in the slip recognizing her as
mortgagee and payee no provisions relating to forfeiture
were contained, the effect of such action by the company
was as though it had said, expressly, "This insurance shall
not be invalidated by any act or neglect of the mortgagor

of the within described property, nor by any foreclosure, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy, nor by the owner procuring other insurance," etc.   When a person of ordinary intelligence read the provisions of the policy, and referred to the slip attached, recognizing him as having an interest, he would at once conclude that he was insured under the policy, and that the mortgagor could not by any subsequent act of his, without the knowledge of the mortgagee, render the policy void as to the mortgagee.   In the case of *Oakland Home Ins. Co. v. Bank of Commerce,* 47 Neb. 717 (66 N. W. 646, 36 L. R. A. 673, 58 Am. St. Rep. 663), the court, in construing the provision·in question here, uses the following language:

"If the language were ambiguous in its grammatical signification, we would be compelled to adopt that construction which would be more favorable to the insured.   Insurance policies are not contracts deliberated upon, clause by clause, and effected after detailed negotiations between insured and insurer.   The actual contract is for the most part entered into before the policy is delivered.   The policy is proposed and tendered by the insurer on its own form. If it seeks to protect itself by a condition, it should clearly express that condition by the policy.   If it resorts to ambiguous language, under familiar rules of construction, such language must be taken most strongly against the party proposing it and in favor of the other party.   But we do not see any marked ambiguity in this policy.   We repeat the clause, omitting words not essential to its construction on the feature before us.   'If   .   .   .   an interest   .   .   .   shall exist in favor of a mortgagee,   .   .   .   the conditions hereinbefore contained shall apply in the manner expressed in such provisions and conditions of insurance relating to such interest as shall be written upon, attached, or appended hereto.'   'The conditions hereinbefore contained shall apply,' not absolutely, but in a

qualified way, 'in the manner expressed in such provisions and conditions   .   .   .   as shall be written upon, attached, or appended hereto;' that is, in order to render the general conditions of the policy applicable to the interest of a mortgagee, there must be written upon, attached, or appended to the policy, relating to the interest of the mortgagee, some provisions or conditions expressing in what manner the conditions of the policy shall be so applicable. Neither in the 'loss payable clause' nor otherwise by writing upon, attached to, or appended to the policy was there any provision or condition carrying the conditions of the policy into such clause or rendering them in any manner applicable.   The authorities cited by plaintiff in error are not opposed to this construction.   In some cases the mortgage clause was not executed until after the policy had become voidable, and was then issued without new consideration while the insurer was ignorant of the facts avoiding the policy.   In other cases the 'loss payable clause' stood alone without provision in the policy as to its meaning or extent.   In this case, in view of the clause in the policy, the 'loss payable clause' must be taken as if it contained an express provision insuring the mortgagee without regard to the conditions imposed upon the owner in the body of the policy."

We hold, therefore, that the plaintiff was the insured under the policy, was entitled to sue upon the policy, and that the subsequent acts of Raub did not affect the policy, so far as Minnie Wegner is concerned.   The demurrer to the answer was properly sustained, and the judgment is affirmed.

REAVIS, C. J., and HADLEY, DUNBAR, WHITE and FULLERTON, JJ., concur.

ANDERS, J. (dissenting).—It appears from the record in this case, as stated in the opinion of the majority of this court, that one Andrew Raub was the owner of land upon which was situated a house; that he borrowed $400 from one Minnie Wegner, and, to secure the payment thereof, executed a mortgage upon the premises, and agreed in said

mortgage to keep said house insured in the sum of $300, loss, if any, payable to said Minnie Wegner, her heirs or assigns, until the said mortgage was fully paid; that subsequently, and on the date of said mortgage, the appellant insured the said property against loss by fire in the sum of $300, the policy naming Raub as the insured, and containing the provision, "loss, if any, payable to Minnie Wegner, mortgagee, as her interest may appear;" that subsequently Raub transferred his interest in said property to one Edith Sheridan, without the knowledge of the mortgagee; that the house covered by the policy of insurance was thereafter entirely destroyed by fire, and was of greater value than the amount of the insurance; that no payments have been made upon the said mortgage, and that proofs of loss were offered by said Wegner, but that appellant refused to accept such proofs and to pay said loss; and that said Wegner, thereafter assigned her rights under said policy, as well as her mortgage, to the respondent, who brought this action to recover the amount of the insurance and costs. The facts above stated were substantially set forth in the complaint, and were not denied by the appellant. The policy upon which this action is based provides, in addition to the provision as to the payment of loss, if any, to the mortgagee, above set forth, as follows:

"This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on the property covered in whole or in part by this policy; or if any change other than by the death of the insured, take place in the interest, title or possession of the subject of insurance (except change of occupants without increase of hazard) whether by legal process or judgment, or by voluntary act of the insured or otherwise   .   .   .   If, with the consent of this company, an interest under the policy shall exist in favor of a mortgagee, or of any person

or corporation having an interest in the subject of insurance other than the interest of the insured as described herein, the conditons hereinbefore contained shall apply in the manner expressed in such provisions and conditions of insurance relating to such interest as shall be written upon, attached or appended thereto   .   .   .   This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements or conditions as may be endorsed hereon or added hereto."

The appellant in its answer alleges, in effect, among other things, that the respondent's rights under the policy sued on had been forfeited by the sale of the property by Raub, the insured, to Edith Sheridan, and by the procuring of other insurance upon the building by such grantee, without the knowledge or consent of the appellant.  A demurrer was sustained to the answer, and judgment entered in favor of the plaintiff (respondent) in accordance with the prayer of the complaint.  It is stated in the prevailing opinion of the court that "the questions raised upon this appeal depend upon the question whether Andrew Raub was the insured under the policy of insurance, or whether Minnie Wegner was the insured," and that "the determination of this question must depend upon the construction of the contract of insurance."  But, in my judgment, the question whether or not Minnie Wegner was the insured is not now before this court for determination.  It was not alleged in the complaint herein that she was the insured.  On the contrary, the insurance policy was made a part of respondent's complaint, and it shows upon its face that Raub, and not Wegner, was the insured.  The execution of the policy set out in the complaint was admitted by the defendant company, and it therefore follows that there was no ground for controversy upon this question in the trial court.  Of course, I do not mean to say, or to be understood as saying, that Minnie Wegner obtained no

rights as against the insurer by virtue of the policy issued to Raub. But I do say that it appears to my mind that the rights she had were not those of a party to the contract between the insurance company and Raub, but simply of a beneficiary thereunder. And her right of recovery, as against the company, upon the policy under consideration, depends, in my opinion, entirely upon the question whether the insured (that is, Raub) could recover if he was suing upon his policy; and, from the undisputed facts in the case, it is plain that he would have had in that event no cause of action against the appellant company.

It is also said in the majority opinion that "the general rule is that when a mortgagor procures a policy of insurance to be issued to himself, loss, if any, payable to the mortgagee as interest may appear, the former is the insured, and subsequent alienation avoids the policy." I do not doubt the correctness of that proposition, for it is in accord with both reason and authority, and I think the rule thus laid down should be applied in this case. If it is not applicable here, it must in some way appear that this case presents an exception to the "general rule," and I am utterly unable to discover that it does. It will not do to say that the company *intended* to insure the interest of the mortgagee in the property described in the policy, in the absence of any statement in the contract or in the record indicative of such intention. It must be borne in mind that no fraud is imputed to appellant in regard to the form or contents of the policy, and that no claim is made that any party interested in it was unaware of its provisions at the time it was issued and delivered; and, its language being plain and unambiguous, there is no reason for invoking any technical rule of construction in order to ascertain its meaning. It must also be borne in mind that the policy in question contains no clause securing the mortgagee

against those acts of the mortgagor, the doing of which, it was agreed, should render the "entire policy" void.

It plainly appears from the record herein that the mortgage clause in the policy of insurance is in the precise form stipulated for by the mortgagee, Minnie Wegner, in her agreement with Raub, which, it is alleged in the complaint, was inserted in the mortgage executed by the latter. If this mortgagee desired to secure herself against the acts of the mortgagor, she could easily have done so by causing a stipulation to that effect to be "written upon, attached, or appended" to the policy, as was done in *Pioneer Savings & Loan Co. v. Providence, etc., Ins. Co.,* 17 Wash. 175, cited by the court. But it is virtually held by this court, contrary to what it declares to be the "general rule," that no such direct stipulation was necessary; that in this instance the mortgagee was secured against the acts of the mortgagor by virtue of the provision in the policy that "if, with the consent of this company, an interest under the policy shall exist in favor of a mortgagee or of any person or corporation having an interest in the subject of insurance, other than the interest of the insured as described herein, the conditions [against alienation, etc.] hereinbefore contained shall apply in the manner expressed in such provisions and conditions of insurance *relating to such interest as shall be written upon, attached, or appended hereto.*" Now, what condition or provision of insurance *relating to the interest of the mortgagee was* written upon, attached, or appended to the policy? There was none, it will be observed, other than this: "loss, if any, payable to Minnie Wegner, mortgagee, as her interest may appear;" and it does not even purport to *express the manner in which* the provision that "this entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void . . . if any change other than by the death of

the insured take place in the interest, title, or possession of the subject of insurance . . . by voluntary act of the insured or otherwise," shall apply to the "interest" of the mortgagee. And, that being true, I am unable to understand by what course of reasoning or rule of construction it can be said, as the majority of the court say, that "when the company consented to the existence of the interest of Minnie Wegner by recognizing her as mortgagee and payee and delivering the contract to her, and when it said 'the conditions hereinbefore contained shall apply in the manner expressed in such provisions . . .. as. shall be written upon, attached or appended thereto,' and when in the slip recognizing her as mortgagee and payee no provisions relating to forfeiture were contained, the effect of such action by the company was as though it had said expressly, 'this insurance shall not be invalidated by any act or neglect of the mortgagor of the within described property, nor by any foreclosure nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy, nor by the owner procuring other insurance.' " In my opinion, the mortgage slip attached to the policy amounted to nothing more than a simple agreement that the company might pay the loss, when payable, to the mortgagee for and on account of the insured. In no other respect did it affect, or purport to affect, the contract between the insurer and the insured. This court in its decision seems to have been influenced largely by the opinion of the supreme court of Nebraska in the case of *Oakland Home Ins. Co. v. Bank of Commerce*, 47 Neb. 717. That case is also reported in 58 Am. St. Rep. 663; and Mr. Freeman, the learned annotator and reporter, says in his note on page 667 that "that case goes to the extreme, if not questionable, limit, in uphold-

ing the rights of the mortgagee, where there is no clause in the policy securing the mortgagee against any act or neglect of the mortgagor." The mortgage clause in that case was similar to that in the case at bar, but, from a careful consideration of the opinion, I am thoroughly convinced that the decision is contrary to the general current of authority, and should not be followed by this court.

For the foregoing reasons, I am of the opinion that the trial court erred in sustaining the demurrer to the appellant's answer, and that the judgment should be reversed.